IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **ARGONAUT INSURANCE COMPANY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 4:23-CV-0053 |
| ) | |
| **GCBF, LTD. DBA EARTH TECH;** ) | |
| **SATERRA, LLC; GCBF 1, LLC;** ) | |
| **GREENTECH ECO SOLUTIONS, LLC NKA** ) | |
| **SATERRA WATER & ENERGY, LLC;** ) | |
| **JUSTIN GAFFNEY; KRYSTAL GAFFNEY;** ) | |
| **DAVID BAIN; ADRIANA BAIN;** ) | |
| **BRYAN DODSON; and SHAYE DODSON** ) | |
| ) | |
| **Defendants.** ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Argonaut Insurance Company ("Argo" or the "Surety"), files this Original Complaint against Defendants GCBF, Ltd. dba Earth Tech; Saterra, LLC; GCBF 1, LLC; Greentech Eco Solutions, LLC nka Saterra Water & Energy, LLC; Justin Gaffney; Krystal Gaffney; David Bain; Adriana Bain; Bryan Dodson; and Shaye Dodson (collectively "Defendants"), and respectfully states as follows:

### I.  PARTIES

1. Argonaut Insurance Company is Illinois corporation with its principal place of business and corporate headquarters located at 225 West Washington Street, 24th Floor, Chicago, Illinois 60606. Argo is duly qualified and authorized to transact business within the State of Texas. For purposes of diversity jurisdiction, Argo is a citizen of Illinois.

2. Upon information and belief, GCBF, Ltd. dba Earth Tech ("Earth Tech") is a Texas

limited partnership with its principal place of business in Frisco, Texas. Upon information and belief, Earth Tech's partners include GCBF 1, LLC and Justin Gaffney. Upon information and belief, GCBF 1, LLC's sole manager is Justin Gaffney. Upon information and belief, Justin Gaffney is an individual citizen of the State of Texas. As such, for purposes of diversity jurisdiction, Earth Tech is a citizen of Texas. Earth Tech may be served with process through its registered agent, Justin Gaffney at 9633 Millstream Dr., Frisco, Texas 75033.

3. Upon information and belief, Saterra, LLC ("Saterra") is a Texas limited liability company with its principal place of business in Frisco, Texas. Upon information and belief, Saterra's members include Bryan Dodson, David Bain, and Justin Gaffney, each of whom are individual citizens of the State of Texas. As such, for purposes of diversity jurisdiction, Saterra is a citizen of Texas. Saterra may be served with process through its registered agent, David Bain at 5000 Eldorado Parkway, Ste. 150, Frisco, Texas 75033, 467 Jan Kelly Lane, Houston, Texas 77024, or wherever he may be found.

4. Upon information and belief, GCBF 1, LLC ("GCBF") is a Texas limited liability company with its principal place of business in Frisco, Texas. Upon information and belief, GCBF's sole member is Justin Gaffney, who is an individual resident of the State of Texas. As such, for purposes of diversity jurisdiction, GCBF is a citizen of Texas. GCBF may be served with process through its registered agent, Justin Gaffney at 9633 Millstream Dr., Frisco, Texas 75033.

5. Upon information and belief, Greentech Eco Solutions, LLC n/k/a Saterra Water & Energy, LLC ("Greentech") is a Texas limited liability company with its principal place of business in Frisco, Texas. Upon information and belief, Greentech's members include Aaron Sherman, Bryan Dodson and David Bain, each of whom are individual citizens of the State of Texas. As such, for purposes of diversity jurisdiction, Greentech is a citizen of Texas. Greentech

may be served with process through its registered agent, Bryan Dodson at 3554 Norwich Lane, Frisco, Texas 75033.

6. Upon information and belief, Justin Gaffney is a citizen of the State of Texas and may be served with process at his residence 9633 Millstream Dr., Frisco, Texas 75033, or wherever he may be found.

7. Upon information and belief, Krystal Gaffney is a citizen of the State of Texas and may be served with process at his residence 9633 Millstream Dr., Frisco, Texas 75033, or wherever she may be found.

8. Upon information and belief, David Bain is a citizen of the State of Texas and may be served with process at his residence 467 Jan Kelly Lane, Houston, Texas 77024, or wherever he may be found.

9. Upon information and belief, Adriana Bain is a citizen of the State of Texas and may be served with process at his residence 467 Jan Kelly Lane, Houston, Texas 77024, or wherever she may be found.

10. Upon information and belief, Bryan Dodson is a citizen of the State of Texas and may be served with process at his residence 3554 Norwich Lane, Frisco, Texas 75033, or wherever he may be found.

11. Upon information and belief, Shaye Dodson is a citizen of the State of Texas and may be served with process at his residence 3554 Norwich Lane, Frisco, Texas 75033, or wherever she may be found.

## II. JURISDICTION AND VENUE

12. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000,

exclusive of interest and cost.

13. Because the Plaintiff, Argo, is a citizen of Illinois for diversity purposes, and Defendants are all citizens of Texas for diversity purposes, complete diversity exists, and this Court has diversity jurisdiction over this matter.

14. Venue is proper in this district under 28 U.S.C. § 1391 in that (a) some of the Defendants either reside or maintain a principal place of business in this district in the State of Texas, (b) a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district, and (c) Defendants are subject to personal jurisdiction in this district at the commencement of this action and there is no district in which the action may otherwise be brought.

### III.  FACTUAL ALLEGATIONS

**A.  The Indemnity Agreement**

15. To induce the Surety to issue the Bonds (as hereinafter defined), on or about January 11, 2019, Earth Tech, Saterra, GCBF, Greentech, Justin Gaffney, Krystal Gaffney, David Bain, Adriana Bain, Bryan Dodson, and Shaye Dodson each executed a General Indemnity Agreement, the purpose of which was to induce the Surety to furnish bonds on behalf of Earth Tech and protect the Surety from any loss or expense it may incur arising from or related to the issuance of any such bonds. A true and correct copy of the January 11, 2019 General Indemnity Agreement (the "Indemnity Agreement"), is attached hereto as ***Exhibit "A"*** and fully incorporated herein for all purposes. Earth Tech, Saterra, GCBF, Greentech, Justin Gaffney, Krystal Gaffney, David Bain, Adriana Bain, Bryan Dodson, and Shaye Dodson are hereinafter collectively the "Indemnitors."

16. Under the Indemnity Agreement, the Indemnitors, individually, jointly and severally, agreed to indemnify and hold Argo harmless from any and all Loss sustained or incurred

by reason of having executed or being requested to execute the Bonds. Specifically, pursuant to the Indemnity Agreement, the Indemnitors agreed as follows:

> To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or In connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement: (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand.

(***Exhibit "A"***, p. 1, ¶ 2).

17. The Indemnity Agreement defines Losses and Loss as:

> . . . any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

(***Exhibit "A"***, p.1, ¶ Definitions).

18. To the extent that Argo makes any payments under the Bonds, the Indemnitors further agreed that "vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s)." (***Exhibit "A"***, p. 1, ¶ 2).

19. Further, by execution of the Indemnity Agreement in favor of Argo, the Indemnitors obligated themselves to fully collateralize Argo, upon demand, if losses were either

incurred or anticipated by Argo in connection with issuing bonds.

> In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses.

(***Exhibit "A"***, p.1, ¶ 4).

20. When the Surety receives a claim under any Bond, "the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same." (***Exhibit "A"***, p.1, ¶ 6)

**B.   The Surety's Incurred Loss and Anticipated Loss**

21. In reliance upon its rights under the Indemnity Agreement, the Surety issued two performance and payment bonds on behalf of Earth Tech, as principal, and Marrillia Design and Construction, as oblige. Performance bond and payment bond no. CMGP00004948 (the "New Dixie Bonds") was for the construction of the project known as the New Dixie Corridor Elementary School, Subcontract No. 2020- 101 Geothermal (the "New Dixie Project"). Performance and payment bond no. CMGP00004961 (the "West Broadway Bonds") was for the construction of the project known as the West Broadway Elementary School; Project No. 2021-073 (the "West Broadway Project"). Attached hereto as ***Exhibit "B"*** and ***Exhibit "C"*** are true and correct copies of the New Dixie Bonds and West Broadway Bonds, respectively. The New Dixie Bonds and West Broadway Bonds are collectively referred to herein as the "Bonds".

22. The Surety has received and/or is presently aware of payment bond claims totaling $225,102.42 plus interest and attorneys' fees collectively on the Bonds (hereinafter referred to as the "Claims"). The Surety has already reviewed and paid Claims in the amount of $132,937.18 in

accordance with the Surety's obligations under the Bonds. Additionally, as of December 31, 2022, the Surety has incurred an additional $13,239.96 in expenses in furtherance of its investigations into and defense of the Claims. Accordingly, as of the date of this Complaint, the Surety has incurred losses, excluding expenses and attorney fees, in the amount of $146,177.14 ("Incurred Loss"). The Surety has also received a performance bond claim on the West Broadway Bonds, and as a result, is further facing additional losses, excluding expenses and attorney fees, in the approximate amount of $406,291.00 ("Anticipated Loss").

23. As of the filing of this Complaint, the Surety's exposure to Loss totals $552,468.14 on the Bonds.

24. By virtue of these Claims, the posting of collateral, and other obligations of the Indemnitors, have been triggered under the Indemnity Agreement.

25. By letter dated June 24, 2022, attached hereto as ***Exhibit "D"***, Argo demanded that the Indemnitors immediately post Collateral Security to Argo in the amount of $45,252.04 representing the amount Argo deemed necessary as of the date of that letter to protect and exonerate Argo from actual or anticipated Loss, as well as actual or anticipated expenses, costs, and fees, within five (5) days of the date of the letter.

26. By letter dated August 10, 2022, attached hereto as ***Exhibit "E"***, the Surety again demanded that the Indemnitors immediately post Collateral Security to Argo in the amount of $175,696.75 representing the amount Argo deemed necessary as of the date of that letter to protect and exonerate Argo from actual or anticipated Loss, as well as actual or anticipated expenses, costs, and fees, within five (5) days of the date of the letter.

27. Despite the Surety's demands, the Indemnitors have failed to deposit any collateral with the Surety relative to Claims on the Project in violation of the Indemnity Agreement.

28. As of the date of this filing, the Indemnitors have refused to do anything to hold the Surety harmless.

29. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

### IV.   CAUSES OF ACTION

*Count I*
*Specific Performance and Permanent Injunction*

30. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

31. Despite the explicit and unambiguous language of the Indemnity Agreement and the written demand letters from the Surety, the Indemnitors have refused to perform or honor its specific obligations to indemnify, exonerate, and/or collateralize the Surety.

32. The Surety issued written demands to the Indemnitors on June 24, 2022, and again on August 10, 2022, notifying the Indemnitors that the Surety has received Claims on the Bonds and been subjected to Loss on the Bonds and demanding that the Indemnitors adhere to their collateral security requirements agreed to in the Indemnity Agreement.

33. The explicit and unambiguous language of the Indemnity Agreement afforded the Surety with unconditional rights and imposed specific obligations on the Indemnitors, simply upon demand, to exonerate and/or collateralize the Surety under the Bond.

34. The Indemnitors have refused to perform their specific obligations to exonerate the Surety under the Bonds and/or to post collateral to secure all potential Loss of the Surety in connection with the Bonds.

35. As a result of the Indemnitors failure to collateralize the Surety, the Surety has no adequate remedy at law.

36. As a result of the Claims, the Surety has "the right to reasonable access to the books, records, and accounts of the Indemnitors;" however, the Indemnitors have not provided the Surety with such access.

37. For these reasons, the Surety is entitled to specific performance by the Indemnitors of the provisions of the Indemnity Agreement relating to its specific obligations to procure the complete discharge of the Surety under the Bonds and to post collateral to secure all potential Loss of the Surety in connection with the Bonds and/or in the enforcement of the Indemnity Agreement.

38. It is plain that, in evaluating the balance of equities, they favor the unconditional rights of the Surety under the Indemnity Agreement and the entitlement of the Surety to enforce such unconditional rights and to require the Indemnitors to specifically perform its clear obligations thereunder.

39. Based on the failure of the Indemnitors to perform its contractual obligations, the Surety is entitled to judgment from this Court, compelling the Indemnitors, each jointly and severally, (a) to perform its specific obligations, which the Indemnitors are specifically obligated to perform under the Indemnity Agreement, (b) to fully exonerate the Surety under the Bonds, (c) to provide collateral to Argo in an amount sufficient to discharge any Loss of Argo, and (d) to provide Argo with full access to the Indemnitors books and records.

## Count II
### Breach of Indemnity Agreement

40. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

41. Indemnitors owed the Surety contractual obligations arising out of the Indemnity Agreement.

42. Indemnitors have failed, delayed, refused, or otherwise been unable to fully and

satisfactorily perform its contractual obligations and/or discharge indebtedness arising under the construction contract which the Obligee in connection with the Claims for which the Bonds were issued. The Indemnitors' breaches have resulted in direct and indirect Loss to the Surety.

43. The Surety has incurred damages as a result of Indemnitors' material breaches in that, as of the date of this filing, the Surety has Incurred Loss and Anticipated Loss, and continues to incur Loss, as a result of issuance of the Bonds.

44. Under Paragraph 2 the Indemnitors are obligated to "indemnity, hold harmless and exonerate Surety from and against any and all Losses." (***Exhibit "A"***, p.1, ¶ 2). The Indemnity Agreement defined Loss to include "(a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement." (***Exhibit "A"***, p.1, ¶ Definitions).

45. Under Paragraph 4 of the Indemnity Agreement, the Indemnitors are obligated to "deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses" (***Exhibit "A"***, p.1, ¶ 4).

46.     Pursuant to Paragraphs 2 and 4 of the Indemnity Agreement, on June 24, 2022, and again on August 10, 2022, the Surety demanded that the Indemnitors deposit collateral relative to the claims or otherwise exonerate, indemnify, and save harmless the Surety from Loss associated with the Claims.

47.     Despite the Surety's demand, to date, the Indemnitors have failed and/or refused to exonerate, collateralize, and indemnify the Surety or to otherwise pay the Surety an amount sufficient to discharge the Loss or Claims against the Surety from having issued the Bonds.

48.     The failure of the Indemnitors to deposit the demanded collateral with the Surety constitutes a breach of Paragraph 4 of the Indemnity Agreement. Further, the failure of the Indemnitors to exonerate, indemnify, and save harmless the Surety from the Claims constitutes a breach of Paragraph 2 of the Indemnity Agreement. Each of these failures by the Indemnitors constitute a Default under Paragraph 10 of the Indemnity Agreement. The wrongful acts of the Indemnitors constitute independent breaches of the Indemnity Agreement, resulting in damages to the Surety. (*Exhibit "A"*, ¶¶ 2, 4 and 10).

49.     Under the Indemnity Agreement, the Indemnitors are jointly and severally liable to the Surety for all of the Surety's Loss, including attorney's fees, in connection with claims on the Bonds. (*Exhibit "A"*, ¶ beginning with "As an inducement").

50.     The Surety is therefore entitled to payment by the Indemnitors for all of the Surety's Loss resulting from issuance of the Bonds.

### Count III
### *Recovery of Attorneys' Fees and Expenses*

51.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

52.     The Surety is entitled to recover its attorneys' fees, interest, and expenses from the

Indemnitors as provided in the Indemnity Agreement and applicable law.

53. Further, the Surety is entitled to pre-judgment and post-judgment interest at the rate of "130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal" as of the date of the Surety's demand (***Exhibit "A"***, p. 3, ¶ 15).[1]

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Argonaut Insurance Company respectfully requests that GCBF, Ltd. dba Earth Tech; Saterra, LLC; GCBF 1, LLC; Greentech Eco Solutions, LLC nka Saterra Water & Energy, LLC; Justin Gaffney; Krystal Gaffney; David Bain; Adriana Bain; Bryan Dodson; and Shaye Dodson be cited to appear and answer herein and, upon final trial thereof, that Argonaut Insurance Company receive:

1. The injunctive relief described herein against Defendants, GCBF, Ltd. dba Earth Tech; Saterra, LLC; GCBF 1, LLC; Greentech Eco Solutions, LLC nka Saterra Water & Energy, LLC; Justin Gaffney; Krystal Gaffney; David Bain; Adriana Bain; Bryan Dodson; and Shaye Dodson, jointly and severally, compelling them to post collateral to Argonaut Insurance Company in the sum of $552,468.14 plus additional funds necessary to secure the loss, costs, expenses, court cost, counsel fees expended and/or to be expended as necessary in order to enforce the Indemnity Agreement, and to provide Argonaut Insurance Company with full access to the Indemnitors books and records;

2. Judgment against Defendants, GCBF, Ltd. dba Earth Tech; Saterra, LLC; GCBF 1, LLC; Greentech Eco Solutions, LLC nka Saterra Water & Energy, LLC; Justin Gaffney; Krystal Gaffney; David Bain; Adriana Bain; Bryan Dodson; and Shaye Dodson, jointly and severally, for amounts necessary to indemnify and exonerate Argonaut Insurance Company from all liability asserted against it;

3. Pre-judgment and post judgment interest at the maximum permissible at law or in equity;

4. Costs of this suit and attorneys' fees; and

---

[1] The prime rate published by the Wall Street Journal for December 31, 2021 (the December 31st prior to any amount becoming due to the Surety under the Indemnity Agreement) was 3.25%—130% of that rate equals 4.225%.

5. Such other and further relief to which the Argonaut Insurance Company is justly entitled.

         **KREBS FARLEY & DRY, PLLC**

         By: */s/ Steven K. Cannon*
          Ryan D. Dry
          State Bar No. 24050532
          Steven K. Cannon
          State Bar No. 24086997
          James D. Ewing
          State Bar No. 24110821
          909 18th Street
          Plano, TX 75074
          (972) 737-2564 Telephone
          (972) 737-2543 Facsimile
          rdry@krebsfarley.com
          scannon@krebsfarley.com
          jewing@krebsfarley.com

         **ATTORNEYS FOR PLAINTIFF**
         **ARGONAUT INSURANCE COMPANY**